Good morning, judges. I'm Joyce Weaver Johnson for the appellants, and I thought the panel might like to know how the first named appellant pronounces his name. He says Asselin. Asselin, thank you. Has over two syllables with a Z in it. Thank you. I'd like to briefly summarize our argument. Do you want to reserve any time for rebuttal? Yes, please. And then briefly address Melinda, and let me take this opportunity to ask if the panel can tell me how Augusta and Brenda and Melinda pronounce their surname. Well, we call it Melinda. Okay, thank you. We don't know for sure. All right. How long do you want to reserve? Probably about three minutes. Okay. Proceed. All right. The district court should have granted qualified immunity to appellants. Their actions were reasonable and were done pursuant to consultation with prosecutors and approval by independent judges. Even assuming that Judge Wolverton's suppression ruling was required because of the absence of the work as a whole, the district court erred because this was not clearly established under the particular circumstances that were involved here. Leon requires deference to independent magistrates' decisions. That means that these warrants were presumptively valid throughout the months of their issuance and execution until the suppression ruling. The district court's denial of qualified immunity on this record… Should a policeman have known that if you can't say the material as a whole is indecent, then you really can't say anything? Should a policeman have known that, should five magistrates have known it, I expect that if they were to look at this case and how it's proceeded, they would have remembered hearing about that in law school. Well, I hear. I think Miller is clearly established, but then the question gets a little more complicated in the sense, how do you apply Miller? Should the cop on the street be required to understand Miller? I have a case that recently went to the Supreme Court, the violent video games, and it took them 82 pages for the Supreme Court to tell us how they were going to decide that. So that's the issue in terms of, does the clearly established go into that particular area? I think Miller is the law, but obviously my understanding is the detective submitted excerpts along with the search warrant. Did any of the magistrate or the judges ever ask to have more than just the excerpts, or how does that play out? No, Judge Kellen, none of the magistrates or judges ever asked for more. The work as a whole was back at the station and could have been brought down in a matter of half an hour. Well, so does that fall on the detective in terms of that he should have known that Miller said as a whole, or the fact that the judges should have known that Miller said as a whole? How does that work for the detective? I would argue that certainly the judges should have known, if that is indeed mandatory under Miller. The detectives are not legally trained. Perhaps detectives who had spent more time in the First Amendment arena would have done that. Well, now Miller is more of a, I mean, Malinder is more of a Fourth Amendment case, and this is a First Amendment case. Does that make a difference in terms of the fact that this is a First Amendment case, and I think the First Amendment is not the bailiwick of police officers nearly as much as the Fourth Amendment? So does that make a difference, but do we still need to wait for Malinder to decide this case? Judge, I believe that this is not a First Amendment case. The fact that a book is present in the record and is an important part of the fact pattern, I believe, does not convert it from a fairly simple Fourth Amendment case. Yeah, but it's better for you if it's First Amendment than if it's Fourth Amendment, because police officers, the Fourth Amendment is their bread and butter. If you're asking for an officer has to know every nuance of the First Amendment, that's better for you. So I'm not, I don't want to argue your case, but I'm not understanding why you're saying this is just a straight Fourth Amendment, because officers deal with the Fourth Amendment every day. You make a good point. Why, thank you. Help yourself, make some more for me. Counsel, I don't understand why the policeman would have to get beyond this language when taken as a whole in the city ordinance. How they would get beyond it? He's searching for evidence of a violation of 850.020 in the Anchorage Municipal Code, and it uses this phrase, when taken as a whole. How they get past that? Right. Why wouldn't a policeman read that and say, gee, I better see if when taken as a whole it's sturdy? Perhaps some would. And in this case, the record is what we have. And the record is that, I don't believe the issue is mentioned anywhere in the warrant applications, and it's not mentioned in these cases. Let me ask you something else, because I don't want to run out of time before I can. I had trouble figuring out exactly how the state case proceeded, since it wasn't originally the same as the federal case, but eventually the police officers were defendants. And I'm not sure I understand exactly how to do the race judicata analysis. Judge, I think there is no, as far as the dismissal of the state civil case? The dismissal of the state civil case was on statute of limitations grounds. That's right. The dismissal of the state criminal case was? I'm interested in the civil case. Were the policemen parties when it was dismissed on statute of limitations grounds? Yes, Judge. And whether that dismissal, so the policeman's case was dismissed, the case against the policeman was dismissed on the merits? Yes. Is that the end of this case? And if so, why, and if not, why? This case, which raises the same issues as the state case, was filed, the officers were brought into the state case only in 2010. This case had been filed within the statute of limitations in 2008, or late 2007, I believe. Counsel, it seems to me that the case, boiled down, is fairly simple. What the law is, as I understand it, if the law is clearly established, it doesn't matter whether these particular officers knew what they were doing or not. We just objectively agree that the Miller case controlled, or is controlled for a very long time, and because of that, you don't get the benefit of anything that would give them qualified immunity. Our argument there, Judge Fletcher, is that there was so, so much more to these warrant applications than this book. There was an exceedingly detailed series of affidavits which, plainly on the record, show that the detectives were concerned and reasonably concerned about much more than this book. That would be in the excerpt at pages... Sergeant Aslan's affidavit is at excerpt 91, and the warrant applications continue through excerpt 262, I think. I'm looking now at one of the subsequent ones, where he says, Throughout this investigation, there were a total of 11 warrants. Your answer to Judge Fletcher, I think, would have to do with the affidavit in support of the initial warrant. Just to avoid any confusion, there is a 2010 affidavit of Sergeant Aslan which incorporates warrants A through I and their supporting applications. What did he have when he got a warrant, the first warrant, besides the cover and five pages of the book? Yeah, starting excerpt page 92. No, that would be excerpt 97 and following. The father called to say an adult male had provided pornography to his 14-year-old son. The father explained that he had recently learned his son had been communicating with this adult male. The two of them began to communicate in a chat room for skiers. At that time, Mr. Armstrong was described as being in his twenties. Mr. Armstrong and L.T. had spoken on the phone. They met face-to-face at a movie the night prior to this affidavit. A ski movie, not a dirty movie, is that correct? Right. Very good. And L.T., the son, had come home with what the father described as a pornographic book that he indicated was given to him by the appellee. Here's my concern. I don't know if it's a violation. He's looking for evidence of a violation of the ordinance. His kid is in a chat room for skiers. He goes to a movie about skiers. An older person, as far as I can tell from the affidavit, a skier, makes friends with his kid. His kid's not a little kid. He's a teenager. And then all I've got for the book being pornographic is the kid's father says it is. Well, I looked at the excerpt and it didn't strike me as appealing to the prurient interest, frankly. It sounded like kind of a crazy person's nightmare. And there's a hotter sex scene in 1984, but taken as a whole, 1984 isn't dirty. But I can imagine many parents thinking 1984 should be banned because of the hotter sex scene than this crazy book has. Even if the magistrate saw Rubber Stamp, his search warrant application, why doesn't the cop have to look at the book? He doesn't have to be a constitutional scholar. All he has to do is read the Anchorage Ordinance. And it says harmful to minors means that quality or description or representation in whatever form of sexual conduct, sexual excitement or sadomasochistic abuse, if when taken as a whole, it appeals to the prurient interest and so forth. And I don't understand. I'm thinking your Leon argument is strong because five magistrates or judges rubber stamped it. On the other hand, I just don't know how you tell without looking at the book as a whole whether it appeals to the prurient interest and does these other bad things. I'm trying to answer the court's specific question. Think about my hypo of the father who's upset because he sees the most well-thumbed pages in 1984 and he flips right open to those and their sex scene. And that's all he looks at. That's all the policeman looks at. Everybody thinks 1984 by George Orwell is a dirty book. Yeah, and I think the record would show that the officers looked at more but chose to copy a section. Why they didn't bring the whole book downtown, I cannot tell you. Does the affidavit say they looked at more? Yeah, and chose some pages. I'm looking at page 100 here, which is the meat of it, and 101, and all I can find here is I reviewed portions of the book. I did locate one particular portion of the book that explicitly describes the sexual encounter. That's correct. And that would fit George Orwell's 1984. That was about the same number of pages? I haven't read it since high school. And it was not the detective's position that it was pornographic. It was the father's indication to the detectives. What I think is important here, Judge, and I would refer to your opinion in Calabretta, which I've listed as an additional site, and Mr. Armstrong indicates he's already familiar with it and has already addressed it. But what more was going on here in your Honor's opinion? Jeff, you can wrap up your argument. You can answer this question, but you're over time. Okay. The familial relationship, the very substantial interest under due process for the parents and child's interest in the privacy of their relationship with each other, and the government's interest in the welfare of children embraces protecting children's interest in the privacy and dignity of their homes and in the lawfully exercised authority of their parents. And this in excerpt 81 to 84, our summary judgment brief below extensively addresses the Supreme Court's jurisprudence on this important value. Thank you. Did either of the panel members have additional questions? All right. Your time's expired. Unless panel members have any additional questions, we've used more than your time, so you won't have any rebuttal time. Mr. Armstrong? Mr. Armstrong? You have 10 minutes, unless we have additional questions for you. You may proceed. Thank you, Judge. It may please the Court. I had a lengthy argument here, but the judges have already made most of my argument for me. The material needs to be examined as a whole. It's the law. It was in statute. Let me ask you something that we haven't addressed so far. I think the point you make is a good one, but I'm concerned about something else, and that's whether the officers were acting in good faith. Leon basically says if they're acting in good faith based on a warrant issued by a neutral magistrate, that's good enough. The idea is as long as the police bring the search warrant before they execute the search to a neutral magistrate and the neutral magistrate approves of it, then the police are protected in most circumstances as long as they didn't lie to the neutral magistrate, which there's no suggestion they did. Actually, there is, which is why we were granted a Franks hearing in the state court and all the warrants were suppressed. As I recall, when I read the decision suppressing them, it was because the work taken as a whole had not been demonstrated to be indecent because no one had ever looked at it as a whole, not because the police lied to the neutral magistrates. Well, he also failed to provide the entire work. He censored the work. Isn't the officer obligated to provide all the information? Different question. Was there any finding or any evidence that any of the police lied to the neutral magistrates? Yes. In the application of the first warrant, Detective Vaseline failed that Mr. Tanaka claimed that the book was pornography. Mr. Tanaka says that he never claimed to the police that the book was pornography. That's immaterial to me because the kid's father doesn't get to make the decision about whether it's pornography. Right, but Detective Vaseline claimed it was pornography in his affidavit. Mr. Tanaka says he never said that to Detective Vaseline. Let's assume for purposes of discussion that it doesn't matter because the kid's father doesn't get to make that decision. Why isn't the policeman acting in good faith if he has said excerpts of the book portray some kind of weird sexual stuff? I couldn't, frankly, understand exactly what was going on in that portion. Maybe the magistrate is just flat wrong because he should have reviewed the work as a whole. Nevertheless, he issues the warrant. Why isn't the policeman protected because he acted in good faith by presenting this to the neutral magistrate and getting a warrant? Because when he lacks probable cause, he's not acting in good faith. He needs to have probable cause first. That's the only thing that matters. That was the decision in Millinder. Well, but he didn't act alone. He went to a magistrate judge and then it went to other judges. Obviously, what was obvious to you wasn't obvious to any of these other people that went to law school. The whole part of Leon is that we want to encourage officers to go to magistrates or judicial officers to look at something and decide should they go in and search someone's home. Why isn't the officer allowed to rely on people that have been to law school that have been judges to say it was okay? Well, in Alaska, magistrates aren't required to have any background in the law. They are appointed by the Supreme Court. I'm sorry, not the Supreme Court, but the presiding judge of the Superior Court. There's no requirement to have any background. They don't go to law school? No. There's no requirement for that at all. That's in Alaska. I don't know how it is in other states, but in Alaska, they're simply appointed. There's no review process and they serve at the pleasure of the presiding judge. So you're saying that someone with no legal background can sign a warrant and obviously they're subject to absolute immunity because of their judicial position, but now we're implying that maybe they should be able to give other people immunity with no legal background. I can't read the signature on the magistrate's issuance of the search warrant for the first warrant. Who was it? I believe it was Magistrate Comfort, and I have no particular information on Magistrate Comfort, whether or not he is an attorney or has any background in law. Was he here in Anchorage? Most of our lay magistrates are in the Bush. I believe he is, but I don't know where he is now or where he was back in 2005. But there's no requirement in Alaska that magistrates have any legal background. What about if we – you read Malunder and you're aware that the Supreme Court has granted cert in that matter. And Malunder has some similarity to this case in that a number of – there was review by a number of judges and the Supreme Court's going to speak on this issue. Should we hold your case until we hear what the Supreme Court says in Malunder? I don't know. I think that Malunder is good law, as written by the Ninth Circuit. But I believe there's several differences and many similarities with Malunder. In Malunder, we have validation and verification that the prosecutors actually reviewed the warrant applications. There's no signature on these warrant applications or any other evidence that prosecutors or any other legal authority reviewed the warrants or reviewed the novel Satenberger prior to granting Detective Aslin his warrant. We have Detective Aslin's assertion that he did so, but that only came out after the first round of Malunder when the Ninth Circuit granted immunity to officers who seek prosecutorial sanction. It wasn't until then that suddenly – This affidavit that you're talking about where Detective Aslin says that, is that part of the record before us? Yes, I believe it's the first – isn't that page 91? All right, so then why can't we consider that? I don't know. It hasn't been independently verified. I was not made aware of it until – there's nothing in the record, nothing in discovery, showed that there was any consultation or sanction by prosecutors or anyone else for his actions. It simply appeared on the motion for summary judgment after discovery had closed that he made this claim that he had been – that it was sanctioned by prosecutors. Now, those prosecutors are also required to be aware of the law, and not only in Alaska do we have Miller, but we have Hanby, which is very clear that it needs to be reviewed prior to issuing any warrants or any seizures or any arrests or anything else. The material needs to be reviewed as a whole. Otherwise, we lower the standard from strict scrutiny to no standard whatsoever. Simply apply for a warrant and you'll get it. Why did you amend your complaint to assert the claims of the officers in the state action? Why did you amend that when you had already filed in federal court? That was a separate case that is for violations of my state rights. In Alaska, we have separate – it's actionable for your violation of your state civil rights, which has much more breadth and depth. We have a guaranteed right to privacy, which is not necessarily a federal right. All right, but the statute of limitations had run on that? Yes. And it was the same sort of factual predicate as in the federal action? Primarily, but it was based on strictly the state rights, whereas the federal case is based on my federal rights. Okay. I just noticed on page 92, if I'm understanding it right, that the first search warrant was issued by Judge Sig Murphy, Sigurd Murphy. Am I looking at the right thing? Was the first warrant issued? I believe the first warrant was issued by Magistrate Comfort. That's my memory. Let me grab my excerpts. Well, maybe that was not the first search warrant. I don't know. That's why I'm asking for help. The first search warrant was sought, I believe, on the 17th or 18th of October in 2005. I can't read the signature. Thank you. That would be page 104, I think. Okay, it's probably not critical. I just thought you might know. In other cases, though, I'm sure there's lots of search warrants issued by magistrates, and some may be actual judges, and some may simply be appointed with no legal experience. It doesn't appear that the panel has any additional questions. I think everything else is covered in the briefs. I believe there are a lot of similarities to Millender, but, again, in Millender, the officers actually documented their involvement with the prosecutors and their consultation with the prosecutors, and in this case, they did not. Do you think we should put this case on hold until the decision comes down in Millender? Judging by the history of the Supreme Court, especially in Gros, I have a feeling they're going to affirm the Ninth Circuit's findings. In Gros, they simply did not buy the officers' excuse that they were simply following orders, and I don't believe that they'll grant them immunity for what they did in Millender. All right, thank you. Did any of the panel members have any questions for the other side? All right, this matter will stand submitted at this time. What I will tell you, though, is after court, we conference on these matters, and if we decide to defer for Millender, then we'll issue an order to the court and tell you that we're vacating submission and deferring until we hear from Millender. So that's what that will mean if you—that will be our decision. All right, thank you for your argument. This matter is submitted at this time.
judges: B Fletcher, Kleinfeld, Callahan, Cjj